# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHELLE M. STRINGFIELD, | ) |
| Plaintiff, | ) ) |
| vs. | ) No. 15-0694-CV-W-FJG ) |
| UNITED FOOD & COMMERICAL WORKERS DISTRICT UNION LOCAL TWO, | ) ) ) |
| Defendant. | ) |

## ORDER

Currently pending before the Court is Defendant United Food & Commercial Workers District Union Local Two ("Union's) Motion and Amended Motion for Summary Judgment (Docs. # 27, 29) and Plaintiff's Motion for Summary Judgment (Doc. # 33).

### I.   BACKGROUND

Plaintiff was hired by Cosentino in May 2010 as a deli worker at Store #105. Plaintiff worked in the deli department up until her termination in October 2014. In connection with her employment, plaintiff was represented by a labor union, UFCW Local 2. Cosentino and UFCW Local 2 are signatories to a Collective Bargaining Agreement with an effective date of March 3, 2014.

Plaintiff had a history while working at Cosentino of employment counseling with progressive consequences ranging from verbal warnings to suspensions. Cosentino had given plaintiff at least one prior warning for leaving a shift early on September 12, 2010. Plaintiff has also received disciplinary counseling for other issues, such as eating in the food prep area, handling sales transactions for herself and her family members

and insubordination. On October 15, 2014, plaintiff received a Final Written Warning for violation of the attendance policy. "[E]xcessive absenteeism including leaving work early" on four occasions (July 12, 2014 – October 8, 2014). The form stated: "Michelle is expected to work entire work schedule and as a shift supervisor lead by example and appropriately support Dept. Mgr." The form also notes that there was previous counseling regarding this issue:

> Jan. 4, 2014 Written = Insubordination & job performance
> Jan. 13, 2014 Suspension = Sales Transaction w/ family member & herself.

The form indicates that the employee has been told that further incidents or violations will result in termination. Under employee signature it states: "Refused to Sign." Immediately after the meeting, plaintiff returned to the Deli area, gathered her belongings, called her father and left the store. Plaintiff never informed any managers that she was sick and needed to leave. Plaintiff only told a co-worker in the Deli area that she was upset and needed to leave.

The CBA, Article XIV provides that "the Employer may discharge an employee for any job related reason, provided the Employer is correct on the facts." Cosentino's attendance policy provides that an employee must provide notice to the Department Manager if he or she needs to leave work early. It also states that an employee may be terminated for leaving work without managerial authorization or for an unreported absence.

Plaintiff or someone on plaintiff's behalf contacted Union Representative Michael Frommer the next day regarding the October 15, 2014 meeting. Mr. Frommer went to the store to determine plaintiff's employment status. Mr. Frommer was told to contact

the Human Resources director. Mr. Frommer attempted to contact the HR director several times between October 16, 2014 and November 3, 2014, but received no response. Mr. Frommer finally spoke with the HR Director on November 4, 2014 and learned that Cosentino considered plaintiff's employment to be terminated. On November 10, 2014, Mr. Frommer filed a grievance with Cosentino. Cosentino responded that the company considered the grievance to be untimely. Mr. Frommer responded by letter dated December 9, 2014 explaining that the Union had made multiple attempts to contact him to determine what happened and to discover the status of plaintiff's employment. The letter stated that if Cosentino refused to meet and discuss the matter, then the December 9, 2014 letter should be considered as a demand for arbitration. Cosentino agreed to meet with the Union in an attempt to resolve the matter. The meeting was originally scheduled for December 23, 2014, but had to be rescheduled to January 8, 2015, because plaintiff was not feeling well shortly before the meeting began. At the meeting on January 8, 2015, plaintiff had an opportunity to speak to Cosentino's representatives. Cosentino however refused to reinstate plaintiff's employment. The Union then investigated whether to take plaintiff's grievance to arbitration. On January 22, 2015, Mr. Frommer sent plaintiff a letter stating that he had been trying to get in contact with her and wanted to meet regarding the grievance. Mr. Frommer and the Union's attorney, Scott Brown, met with plaintiff on January 27, 2015 to discuss the grievance. At the meeting, the parties discussed the issues, why plaintiff was terminated, the dates she left early without authorization, other employees who had also left work early and other incidents regarding plaintiff's work environment. On January 28, 2015, Scott Brown sent a letter to Cosentino requesting

information from the company about plaintiff's employment file and her termination. Cosentino provided the Union with plaintiff's employment file. After investigating plaintiff's termination through meetings with Cosentino, meetings with plaintiff, interviews of store employees, meeting with the Union's attorney and reviewing documents from Cosentino, the Union determined that it could not prevail at an arbitration.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653,

4

655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. Union's Motion and Amended Motion for Summary Judgment[1]

In her Complaint, when asked to describe her claim, plaintiff stated: "unfair labor practice by labor organization to restrain employer [sic] in the exercise of the FMLA rights guaranteed." When asked to state the relief requested, plaintiff stated she wanted the Court to: "find Union in violation of its duty of fair representation by violation of arbitrary, discriminatory and in bad faith asserting my rights to arbitration under FMLA guaranteed rights for unlawful termination." (Plaintiff's Complaint, Doc. # 6).

The Union states that a breach of the duty of fair representation claim against the Union is a hybrid claim, cognizable under §301 of the Labor Management Act of 1947, 29 U.S.C. § 185.

> Section 301 confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185; Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 561-62 (1976). To prevail in a Section 301 hybrid action against a union and an employer, a plaintiff "must prove both that the union breached its duty of fair representation and that the employer breached the collective bargaining agreement." Scott v.United Auto, 242 F.3d 837, 839 (8th Cir.2001). In other words, an employee cannot recover against either party unless the employee proves his or her case against both parties. Id.
>
> A union breaches its duty of fair representation when the union's conduct is "'arbitrary, discriminatory, or in bad faith.'" Smith v. United Parcel Serv., Inc., 96 F.3d 1066, 1068 (8th Cir. 1996)(quoting Vaca v. Sipes, 386 U.S. 171, 190 (1967)). "Mere negligence, poor judgment, or ineptitude on the part of the union is insufficient to establish a breach of the duty of fair representation." Id. (internal quotations omitted). Where a union has acted in good faith, the union's action or inaction does not

---

[1] The Union's original Motion for Summary Judgment and Amended Motion are substantively the same. The Union filed Amended Suggestions in order to fully comply with Local Rule 7.0.

violate the duty of fair representation unless "the union's behavior is so far outside a wide range of reasonableness as to be irrational." Id. at 1068-69 (internal quotations omitted). To show bad faith, a plaintiff must offer "evidence of fraud, deceitful action or dishonest conduct." Id. at 1069 (internal quotations omitted).

Erler v. Graham Packaging Co., No. 4:14-CV-00931-JCH, 2015 WL 4723681,*3 (E.D.Mo. Aug. 10, 2015). In DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151,103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Court stated that a hybrid action is really "two causes of action. . .To prevail against either the company or the Union, . . .[employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union. . . .The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." Id. at 164-65.

The Union argues that it did not breach its duty of fair representation to plaintiff and that plaintiff has failed to show that it acted in an arbitrary manner, in bad faith or that it in any way discriminated against her. When plaintiff was questioned in her deposition she stated:

Q. It's a yes or no question. Is the timeliness issue –
A. Yes, yes.
Q. Is it the only basis on which you're saying the union breached its duty of fair representation to you?
A. I'm going to say yes.

(Plaintiff's Depo. p. 69).

Q. In your view, how did the union act arbitrarily?
A. They didn't do what they were –they didn't do what they were supposed to do.
Q. What did they not do –
A. They didn't fight for me the way they were supposed to.
Q. What further was the union supposed to do for you that they didn't do for you?
A. They should have fought my grievance better than they did. That's my personal opinion.
Q. How could they have fought your grievance better?

6

A. In a better timely manner, quicker, sooner.
Q. How did the union act in a discriminatory manner towards you?
A. Well, they do – they filed grievances of other people in a timely and in a quickly timely manner. And I felt discriminated against. I mean –
Q. And you previously named Jerry Kearney –
A. Tammy Lewis.
Q. - - and Tammy Lewis?
A. Uh-huh.
Q. Why do you think they – the union was discriminating against you?
A. I'm not sure.
Q. In your view, how did the Union act in bad faith towards you?
A. Not responding quick enough.
Q. Not responding quick enough to what?
A. Just not responding quick enough.
Q. Are you referring to the time it took to file the grievance?
A. Just whenever I would try to get into contact, I would never – I mean, it would just take forever, yes.
Q. When do you – do you remember any time that you tried to contact them that it took a long time to receive a response?
A. I can't remember the dates.
Q. Can you give me an approximate?
A. No.

(Plaintiff's Depo. pp. 76-78).

When asked about her FMLA rights, plaintiff stated:

Q. And what did the union do that was an unfair labor practice in regards to your FMLA?
A. Nothing. What did they do? Nothing.
Q. What should they have done?
A. I was there for almost five years. I was entitled to FMLA rights. They should have fought it a little bit better than they did.
Q. The union?
A. Yes.
Q. And when you say they should have fought it better than what they did, what do you mean?
A. It should have went to arbitration. I was entitled to that. I was there almost five years. I never used it. I had documentations. I was sick. They should have fought for me to get –for my FMLA rights. I mean, I was entitled to that. I was with that company for almost five years. I never – I never had sick leave, never nothing. I was entitled to that. They should have –they should have took that – they should have fought for me—they should for fought for me better, I was entitled to my FMLA rights. I shouldn't have been terminated.
Q. When you say they should have fought for me better, what do you mean?
A. They should have took it to arbitration. Not just the timeliness, they should have fought a little bit better. Yes, with the timeliness, it should have been fast. They should

7

have took it to arbitration and fought for me to get my job back. I was entitled to FMLA rights. I had documentations, you know, from the doctors. I was entitled to that. And they didn't do that.
. . .
Q. So if I'm hearing you correctly, the basis of your complaint to say that the union violated its duty of fair representation to you was not timely filing your grievance and not taking your grievance to arbitration?
A. Yes.
Q. Is there anything else that the union could have done?
A. I'm going to say as of right now, no. They should have fought for me because I was entitled to the FMLA rights and my sickness and the timely matter but – yes, you're right, that's about it.
. . .
Q. Besides the timeliness issue with your FMLA rights, is there anything else that the union did to violate its duty of fair representation to you?
A. I'm going to say no.

(Plaintiff's Depo. pp. 87– 93).

In opposition, to the Union's motion, plaintiff makes no effort to controvert the Union's factual statements. Plaintiff states that the Union did not timely file her grievance and made no effort to investigate to determine the real facts of her termination. Plaintiff also alleges that the Union violated the collective bargaining agreement under the Weingarten doctrine[2] when it failed to file a grievance to throw out the October 15, 2014 meeting where plaintiff was unrepresented. Plaintiff also argues that the Union violated its duty of fair representation by failing to argue that plaintiff did not abandon her job and instead was eligible for FMLA.

> Unions enjoy considerable deference in executing their duty of fair representation. Gaston v. Teamsters Local 600, 614 F.3d 774, 778 (8th Cir.2010)(citing Air Line Pilots Ass'n Int'l v. O'Neill, 499 U.S. 65, 78, 111

---

[2] It should be noted that plaintiff in her suggestions in opposition raised for the first time an argument that the Union violated the collective bargaining agreement under the Weingarten doctrine. However, plaintiff did not allege any violation of the Weingarten in her Complaint nor did she mention or refer to it when asked the basis for her claims in her deposition. Thus, the Court will not consider this argument as it was not properly raised.

> S.Ct. 1127, 113 L.Ed.2d 51 (1991)). To establish that a union breached its duty of fair representation, a plaintiff must demonstrate that the union's conduct was "arbitrary, discriminatory, or in bad faith." Vaca v. Sipes, 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). A union's actions are considered arbitrary if "considering all the circumstances at the time of the union's action or inaction, the union's behavior is so far outside a wide range of reasonableness as to be irrational." Cross v. United Auto Workers, Local 1762, 450 F.3d 844, 847 (8th Cir.2006)(citations and internal quotation marks omitted).

Greer v. Metropolitan Council, No. 12-1170 (MJD/JJG), 2014 WL 2002890 (D.Minn. May 14, 2014).

In the instant case, the Court finds there is no dispute as to the actions that the Union took on plaintiff's behalf. After plaintiff left Cosentino on October 15, 2014, the Union representative, Michael Frommer, spoke with plaintiff or her father the next day. Mr. Frommer then went to the store to speak with management. He was directed to contact the HR Director. Over the next couple of weeks, Mr. Frommer attempted to contact the HR Director several times with no response. On November 4, 2014, Mr. Frommer learned from the HR Director that plaintiff had been terminated. Mr. Frommer then filed a grievance on November 10, 2014. Cosentino responded that the grievance was untimely. Mr. Frommer stated that he had made multiple attempts to contact the HR Director with no response. Cosentino responded and stated that while it still believed the grievance to be untimely, it would agree to meet with the Union. The meeting was scheduled for December 23, 2014, but had to be rescheduled to January 8, 2015 due to plaintiff feeling ill shortly before the meeting began. The January 8, 2015 meeting occurred, but Cosentino refused to consider reinstating plaintiff. On January 22, 2015, Mr. Frommer sent plaintiff a letter explaining that he needed to get in contact with her and wanted to meet. Mr. Frommer and the Union's attorney met with plaintiff on

9

January 27, 2015 to discuss the grievance. During the meeting, outstanding issues regarding the grievance were discussed, such as the reason for the termination, the dates plaintiff left early without authorization, other employees who had also left early and other incidents regarding the work environment. Mr. Frommer also met with another Deli employee who was present on October 15, 2014. The employee reported that plaintiff was upset when she returned to the deli and that she moved her finger across her throat and said, "I'm out," and left the deli. On January 28, 2015 the Union's attorney requested information from Cosentino regarding plaintiff's termination. Cosentino provided several documents regarding plaintiff's prior discipline and absenteeism. After meeting with Cosentino representatives, interviewing store employees, meeting with the Union's attorney and reviewing documents, the Union determined that it could not prevail at arbitration. The Union states that even if the grievance was untimely filed, it did not affect the outcome, as Cosentino responded to the grievance and met with the plaintiff and the Union to discuss the grievance. The Union also argues that even if the grievance was considered untimely, it was mere negligence and this is insufficient to establish a breach of the duty of fair representation.

The Court agrees and finds that the Union filed a grievance on plaintiff's behalf, it pursued the grievance with Cosentino, the Union interviewed plaintiff and other employees, met with Cosentino representatives, requested and reviewed documents and also discussed the matter with counsel for the Union. Plaintiff argued that the Union violated its duty of fair representation by failing to argue that she did not abandon her job and instead was eligible for FMLA benefits. However, the Union notes that plaintiff did not offer any evidence that she ever requested the Union to file a grievance on her

behalf regarding her FMLA rights. The grievance which the Union filed on her behalf was for unjust discipline and an unsafe and hostile work environment. Considering all of the circumstances, the Court finds that the Union conducted a thorough and fair investigation of plaintiff's grievance before deciding not to take the grievance to arbitration. "An individual employee does not have an absolute right to have his grievance taken to arbitration." Jones v. United Parcel Service, Inc., 461 F.3d 982, 995 (8th Cir. 2006), cert. denied, 549 U.S. 1340 (2007). Thus, the Court finds that plaintiff has failed to show that the Union's actions were either arbitrary, discriminatory or in bad faith. The Court further finds that there is no genuine dispute as to any material fact regarding whether the Union acted in good faith in processing plaintiff's grievance and deciding not to pursue arbitration. Accordingly, the Court hereby **GRANTS** the Union's Motion for Summary Judgment (Doc. # 29).

### B. Plaintiff's Motion for Summary Judgment

In her Motion for Summary Judgment plaintiff states that the Union acted arbitrarily by substituting "job abandonment" and not processing her meritorious grievance that she was entitled to FMLA leave. Plaintiff also argues that the claim was processed perfunctorily and that the Union was late in filing the grievance.

The Union notes first that plaintiff's Motion and Amended Suggestions in Support of her Motion for Summary Judgment were untimely filed. The deadline for filing summary judgment motions was October 28, 2016. Plaintiff did not file her initial motion for summary judgment until November 28, 2016 and her amended suggestions were filed on December 1, 2016. The Union notes that plaintiff never requested leave to file these untimely motions. Additionally, the Union argues that plaintiff's motions fail to conform

to the Local Rules and she has failed to set forth in separately numbered paragraphs undisputed facts and instead substituted arguments.

The Union also argues that plaintiff again raises in her motion for summary judgment that the Union violated her Weingarten rights. However, the Union states that this claim was never asserted in plaintiff's Complaint nor mentioned by plaintiff in her deposition. Additionally, the Union argues that plaintiff never asserted any allegations that the Union allowed the employer to substitute job abandonment for medical leave of absence on her termination form and has offered no evidence in support of this allegation.

The Court agrees and finds that plaintiff's Motion for Summary Judgment was untimely filed and does not comply with Fed.R.Civ.P. 56 (c). Additionally, even if the Court were to consider plaintiff's Summary Judgment motion, for the reasons stated above, the Court finds there are no disputed facts regarding whether the Union acted in good faith in processing plaintiff's grievance and deciding not to pursue arbitration. For these reasons, the Court hereby **DENIES** plaintiff's Motion for Summary Judgment (Doc. # 33).

### IV.    CONCLUSION

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Defendant United Food & Commercial Workers District Union Local Two ("Union's) Motion and Amended Motion for Summary Judgment (Docs. # 27, 29) and **DENIES** Plaintiff's Motion for Summary Judgment (Doc. # 33).

Date: September 6, 2017             **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                Fernando J. Gaitan, Jr.
                                     United States District Judge